# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Stephen J. Soli, Jr., a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Eureka, California, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of a person and a residential premises.

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"), and I am currently assigned to the Eureka, California Resident Agency of the FBI's San Francisco, California Division. As such, I am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. As part of my duties with FBI, I investigate criminal violations of Title 18 of the United States Code, including violations of 18 U.S.C. § 875. I have investigated numerous cases involving threats in violation of 18 U.S.C. § 875. During these investigations, I have participated in various types of investigative techniques, including physical and electronic surveillance and review of communication records. I have participated in the execution of state and federal arrest warrants and search warrants. I have also analyzed information that was extracted from mobile devices, such as: cellular telephones, laptops, tablets, and other mass storage digital media devices.

3. Based upon my training and experience, interviews I have conducted with defendants, informants, and other witnesses to, or participants in, criminal activity, including threats, I am familiar with the ways in which criminals conduct their business, including the various means and methods by which they use cellular telephones or internet access devices to

facilitate threatening communications. In my experience, criminals often obtain cellular telephones or establish communication accounts in fictitious names, monikers and/or the names of third parties in an effort to conceal their criminal activities from law enforcement.

4. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence located at 7790 NE HWY AC Calhoun, Missouri, 65323 (hereinafter the "**SUBJECT PREMISES**") which is more particularly described in **Attachment A-1**, as well as the person of Tyler Leroy HLBERT, more particularly described in **Attachment A-2**, for the things specified in **Attachment B** hereto, which items constitute contraband, instrumentalities, and evidence of a violation of 18 U.S.C. § 875 (c), that is interstate communication of a threat.

5. Since this affidavit is being submitted for the limited purpose of showing that there is probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

6. On November 28, 2023, the Humboldt County Sheriff's Office ("HCSO") Emergency Communications Center in Humboldt County, California, received a phone call from "Elijah Edwards" indicating that he was picking up his son at the McKinleyville High School ("MHS") and had seen a man with a gun in a holster, carrying a black backpack, and walking on the school campus. "Edwards" provided his phone number as (830) 582-7651, with an address of 970 J Street, Apt 104, Arcata, California. Law enforcement responded to MHS based on the report and conducted a thorough lock down and door-to-door search of the school. No armed subjects were located on the premises and the lockdown was lifted. The details of the report could not be

2

substantiated. Additional investigation revealed that the address provided by "Edwards" does not exist.

7. On November 29, 2023, the HCSO Emergency Communications Center received a phone call from "Elijah Edwards" indicating that he was again at MHS and saw an armed white male adult in the school parking lot. "Edwards" advised that it appeared the male subject had a handgun in his hand and had an "AR" style firearm on his back. "Edwards" provided his phone number as (830) 582-7651, and the same non-existent address of 970 J Street, Apt 104, Arcata, California. Law enforcement was again required to respond to MHS and conducted a thorough lockdown and door-to-door search of the school. Based on this search, it was determined the call could not be substantiated.

8. Later that same day, Arcata Police Department ("APD") received a call from "Eathan Emberee" with a phone number of (408) 636-7572. "Emberee" stated that his daughter, Minor Victim 1 ("MV1"), was in her bedroom actively cutting herself and he could not open the door. APD Dispatch tried to gather location information from "Emberee" but he was unable to provide his physical location and gave several different addresses in the City of Arcata, all of which did not exist. Further investigation later revealed that MV1 was a student at MHS. It also revealed that at no time had she been attempting to cut herself or lock herself in her bedroom, and the emergency call was not made by anyone in her family.

9. On December 5, 2023, a secretary from MHS called the HCSO Emergency Communications Center reporting that she received a call from a male subject saying he was on campus with a weapon and going to shoot people. MHS was locked down and law enforcement responded. The anonymous male caller did not provide his name and blocked his number when he

3

called the school. Ultimately, no suspicious activity was discovered by law enforcement following an extensive search.

10. Later that day on December 5, 2023, the MHS Superintendent informed HCSO that they received a phone call from a male subject saying he placed a bomb in the rear parking lot of MHS. The male's phone number was blocked, and he did not provide a name. Law enforcement responded to MHS again but found no suspicious activity or evidence of any device at the school.

11. Again, on December 5, 2023, the Principal from MHS reported the school received a call from a male subject saying, "I am shooting this time." MHS was locked down and law enforcement responded. The anonymous male caller did not provide his name but failed to use a blocked number. The number associated with this call was (707) 289-6236.

12. On December 7, 2023, at 9:12 AM, "Dylan Doyles" called the HCSO Emergency Communications Center and said he was a student at MHS. "Doyles" said he saw an unknown armed subject on school campus. "Doyles" provided his phone number to HCSO Dispatch as (707) 210-1744. "Doyles" provided his address as 967 J Street, Apartment 93, Arcata, California similar to the non-existent address provided by "Edwards," but with a different apartment number. This address was similarly determined not to exist. The HCSO Dispatcher taking the call, who had previously spoken to "Edwards," thought "Doyles'" voice sounded similar to the previous hoax calls made by "Edwards." Six minutes later that same day, on December 7, 2023, a staff member at MHS reported receiving another phone call from a male subject stating, "I'm running late and there is going to be a bomb."

13. HCSO deputies responded to MHS, conducted a thorough search, and interviews but could not substantiate either threat. HCSO investigators completed "Emergency Disclosure Requests" to TextNow for the following numbers, which were recorded making the false reports:

4

(707) 210-1744, (830) 582-7651, (408) 636-7572, and (707) 289-6236. Upon reviewing provided records, it was determined the numbers ending in 1744, 7651, and 6236, used IP addresses 38.40.63.21 (subpoena) and 38.40.63.62 (subpoena), during the time the false school shooting and bomb threats were made. The IP addresses 38.40.63.21 and 38.40.63.62 were operated by an internet service provider with Conexon Connect LLC, within Adrian, Missouri.

14. Legal process was served on Conexon LLC for the subscriber of the IP addresses at the same date/time that the hoax calls were made. John Beaudoin ("J.B."), an employee with Conexon, responded to the request over email and phone. In correspondence with J.B., he indicated that he was aware of the hoax calls due to earlier interactions he had with the Missouri State Highway Patrol in mid-December 2023 about Tyler HILBERT. J.B. confirmed that Janet Hilbert and Fred Hilbert were current customers of Conexon. J.B. and his technical team examined their records for those IP addresses being utilized at the requested dates and times. The queries generated results which indicated that at one point approximately 150 Conexon customers were associated with it and at another point approximately 75 Conexon customers. The Hilberts' names were not provided as part of those data sets. J.B. indicated that the results were unusual and did not make sense as to why there would be that many name results corresponding at those exact times to those IP addresses. J.B. was unable to provide a full explanation for the results but opined that data provided by other entities, such as TextNow, for the request may have been corrupted or incorrect. 15. Text Now provided additional records in response to a California State Search Warrant. A review of those records revealed the following:

16. For the phone number ending in 7651, the subscriber was listed by an alias name comprised of a string of letters, however, the registration IP address was listed as 38.40.63.62. The subscriber used an Android operating system. Your Affiant has reviewed sent text messages from

5

the number, provided by Text Now, which included, "I did a prank on your school;" "I'm doing something to your school rn;" and "Your school is lockdown because I'm walking around with a gun." The receiving number of these text message was (707) 502-8740, which was determined to be MV1's phone number. MV1 did not respond to these received text messages. The text messages were sent using IP address 38.40.63.62, during the time of MHS threats on 11/28/2023.

17. For the phone number ending in 7572, the subscriber was listed as Tyler HILBERT and an alias name of "Mitchell90e47wskv." Hilbert provided an email address of thilbert2002@gmail.com. The phone was operated from an Android operating system. IP addresses were unavailable for this number; however, it was the number used to allege the hoax medical emergency to APD on 11/29/2023 involving Minor Victim 1 (described above), during the time of the MHS threats.

18. Open-source records identified Tyler Leroy HILBERT, date of birth September 16, 2002, with an address of 7790 NE Highway AC, Calhoun, Missouri 65323. HCSO investigators contacted the Henry County Sheriff's Office in Clinton, Missouri, and spoke with a dispatcher. After providing Hilbert's name for a history of law enforcement contacts, the Henry County dispatcher advised that their agency was familiar with Hilbert, who had dozens of reported misuses of 911 and false emergency related calls for service. On January 1, 2023, HILBERT was arrested for misuse of 911 lines and making a false report. On September 15, 2023, HILBERT was arrested by the Johnson County Sheriff's Office for terrorist threats (2nd degree) and making a false report.

19. In response to a separate California State search Warrant, Google provided HCSO investigators with records related to the Google account associated with thilbert2002@gmail.com. A review of those records reveals the account had an updated postal address in October of 2023 of 7790 NE Highway AC, Calhoun, Missouri. Several electronic devices have accessed the account

from the same IP address of 38.40.63.21 during the times of the described threat calls. The search engine component of the Google account was used to conduct searches including the following language:

"if someone commits a bomb threat is it a misdemeanor"

"McKinleyville High School on lockdown"

"another threat to mckinleyville high school"

20. A review of the social media site Facebook shows three (3) profiles belonging to HILBERT; wherein two (2) of the profiles contained MV1 as a mutual friend.

21. On December 12, 2023, your Affiant interviewed MV1 in the company of her mother. MV1 did not personally know HILBERT as they had not met in person but did know him through the online communication application, Snapchat. MV1's sister, Minor Victim 2 ("MV2"), first met HILBERT on Snapchat in September of 2023 and had been communicating online for a period of time. MV1 indicated that HILBERT and MV2 had been in an internet dating relationship. MV1 began to communicate directly with HILBERT as well through a Snapchat group.

22. MV1's mother said HILBERT pretended to be multiple people and texted her and MV1 from different numbers. When MV1's mother blocked the phone number, HILBERT would create a new one and continue messaging. MV1's mother texted back and told HILBERT to leave her daughter alone or she would call the police. For a while, HILBERT would stop messaging but then got a new phone number pretending to be somebody else. MV1's mother remembered HILBERT saying he was "Patrick Foe" and was going to go to MV2's house to beat her up and blow the house up.

7

23. MV1's mother said that the school threats started a short time after she took MV1's devices (cell phone and tablet) away, so HILBERT could not get in contact with her. MV1's mother surmised the threats began to occur due to the failed contact with MV1.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

24. Searches and seizures of evidence from cellular phones commonly require agents to download or copy information from the cellular phone to be processed later in a laboratory or other controlled environment. This is almost always true because of the following:

   a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

   b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

25. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers)

and any application software that may have been used to create the data (whether stored on hard drives or on external media).

## SEARCH METHODOLOGY TO BE EMPLOYED

26. The search procedure of electronic data contained in computer hardware, computer software, memory storage devices, and/or cell phones may include the following techniques (the following is a nonexclusive list, as other search procedures may be used):

   a. examination of all of the data contained in such computer hardware, computer software, memory storage devices, and/or cell phone to view the data and determine whether that data falls within the items to be seized as set forth herein;

   b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

   c. surveying various file directories and the individual files they contain;

   d. opening files in order to determine their contents;

   e. scanning storage areas;

   f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in **Attachment B**; and/or

   g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in **Attachment B**.

## CONCLUSION

27. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that one or more individuals who reside at the **PREMISES**, more fully described in **Attachment A-1**, has been involved in the interstate communication of a threat, in violation of 18 U.S.C. § 875 (c). Additionally, there is probable cause to believe that

9

evidence of the commission of criminal offenses, namely, violations of 18 U.S.C. § 875 (c) (interstate communication of a threat), is located in the residence described above (the **PREMISES**), as well as on the person of HILBERT, and this evidence, listed in **Attachment B** to this affidavit, which is incorporated herein by reference, is contraband or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

28. Your Affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of the **PREMISES** described in **Attachment A-1** and the person of HILBERT as described in **Attachment A-2**, and seizure and search of the items listed in **Attachment B**.

Respectfully submitted,

Stephen J. Soli, Jr
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me by telephone on this 20th day of May 2024. Sworn to by telephone
11:27 AM, May 20, 2024

HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri



Assistant United States Attorney Kenneth W. Borgnino assisted in the preparation of this affidavit, and Assistant United States Attorney Maureen Brackett reviewed it prior to filing.